THE STATE, EX REL. REED, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(No. 38827—Decided June 2, 1965.)

*Messrs. Fullerton & Shimp,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. Robert M. Duncan, Mr. John A. Sentz, Jr.,* and *Mr. Pierce E. Cunningham,* for appellee.

ZIMMERMAN, J. As relevant, Section 35, Article II of the Constitution of Ohio, recites:

"* * * Such board [Industrial Commission] shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees. When it is found, upon hearing, that an injury, disease or death resulted because of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of the compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards * * *."

Paragraph one of the syllabus of *Slatmeyer* v. *Industrial Commission,* 115 Ohio St. 654, 155 N. E. 484, holds:

"Section 35 of Article II of the Ohio Constitution, as amended in 1923, conferred upon the Industrial Commission of Ohio full power and authority to hear and determine 'whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board;' upon that question of fact the decision of the commission is final."

"* * * Relator in an action in mandamus to compel the allowance of an additional award must show that the finding of the Industrial Commission against him amounts to an abuse of discretion." *State, ex rel. Berry,* v. *Industrial Commission,* 129 Ohio St. 228, 194 N. E. 414. See, also, *State* v. *Ohio Stove Co.,* 154 Ohio St. 27, at pages 36 and 37, 93 N. E. 2d 291, which emphasizes the point that it is the failure of *the employer* to comply with a specific lawful requirement which is the basis for the imposition of an additional award.

*State, ex rel. Whitman,* v. *Industrial Commission,* 131 Ohio

St. 375, 3 N. E. 2d 52, 106 A. L. R. 72, makes it plain that an "employer" within the contemplation of Section 35, Article II of the Ohio Constitution, is one who has failed to comply with a specific safety requirement, such case holding that a general contractor who did not construct faulty scaffolding, the use of which scaffolding caused injury to his employee, could not be successfully charged with a violation of a specific safety requirement.

Here, Rudy owned the elevator cage and was responsible for its condition and maintenance. Sweigart merely used the instrumentality with Rudy's permission to facilitate his work for Rudy. There is nothing to show that Sweigart knew or had reason to believe that the construction and maintenance of the elevator cage violated parts of Bulletin 110. It would, therefore, seem unfair under these circumstances to punish Sweigart for a condition which he did not create and which he had no authority to alter or correct, and thereby place him in the category of an "employer" who failed to comply with a specific safety requirement within the intendment of Section 35, Article II of the Constitution.

There was no abuse of discretion on the part of respondent, and no clear legal duty rested on it to penalize Sweigart by ordering the payment of an additional award. This was the position taken by the Court of Appeals, and we agree therewith. It is well established that penalties are not favored in either law or equity and should be imposed only when clearly justified.

Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.

HERBERT, J., dissenting. I regret that I am unable to agree with my colleagues in the matter of the disposition of this case.

Perhaps additional facts may clarify my position. I do not intend to weigh the evidence but rather to rely upon the uncon-

tradicted evidence of record which may present the law questions in a different light.

The employer, Robert L. Sweigart, contracted with S. J. Rudy & Son to repair cracks in the walls near the tops of certain storage silo bins, about 100 feet high. The tops of the silos, where Sweigart's job was in progress, were reached by a man-lift elevator moving in a shaft between the walls of two silos.

Sweigart and his employees used this elevator in ascending to their place of work and in carrying gear, rope and other equipment used on the job to a swinging scaffold suspended from the tops of the bins.

Sweigart, the employer, had personally used the elevator repeatedly during a period of about one and one-half weeks prior to relator's (Reed's) injury. This elevator is the "device" mentioned in the syllabus of the majority.

Near quitting time, relator was in the elevator with another of Sweigart's employees taking some rope up to place on the scaffold overnight. While the elevator was moving upwards, someone called relator from below. He moved his head and looked down the side of the open shaft, when his head was caught between the elevator moving upwards and the edge of the shaftway, causing severe injuries.

The stipulation of facts states that:

"The cage [of the elevator] measured 24 inches by 28 inches by 86 inches inside. The cage is open at the front. One side and the back is *enclosed to a height of 4 ft.* with the other side being enclosed to a height of 6 ft." Consequently, one side of the elevator was open from approximately the height of a man's waist upwards.

Bulletin No. 110, adopted and issued by the Industrial Commission, at page 167, Section 812.1, provides that:

"Except at the entrance, the car *shall be enclosed at sides and top.* The enclosure at the sides shall be solid or of open work which will reject a one (1) inch diameter ball." (Emphasis added.)

This is a specific safety requirement under the Constitution and laws of Ohio.

Sweigart, the employer, was thoroughly familiar with the

structure and condition of the elevator—he had used it and he saw his employees use it and he and an employee rode in it together.

In view of the stipulation of record, Sweigart was thoroughly familiar with the dangerous and hazardous condition within the cage of the elevator which was obvious to anyone entering the elevator. The majority concedes that the condition of the elevator was violative of a specific safety regulation imposed by law but excuses the employer on the ground that he did not own or maintain the elevator. I cannot agree that this is a sound principle of law. If it is, then an employer, who has borrowed and is using an obviously dangerous device on a contract job upon which an employee is injured, is permitted to escape the obligation of additional compensation by merely saying in substance:

"I don't own or maintain the dangerous device. I just borrow it and use it on the job and require my employees to use it."

The ownership of the device is not material in the disposition of this additional-award-of-compensation claim, but the test is the use of it by the employer, knowing its unguarded hazards and dangers to his employees.

It would have been a simple matter for Sweigart to have asked Rudy to board up the sides and back of the cage of the elevator or to have done so himself rather than violate a regulation specifically adopted to prevent injury or death to an employee.

The failure of the Industrial Commission to grant relator additional compensation was an abuse of discretion.

The judgment of the Court of Appeals should be reversed.