THE STATE, EX REL. LYBURN CONSTRUCTION COMPANY, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

(No. 83AP-626—Decided March 20, 1984.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Robert E. Tait,* for relator.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Lee M. Smith,* for respondent Industrial Commission.

*Messrs. Ward, Kaps, Bainbridge, Maurer, Bloomfield & Melvin* and *Mr. Robert L. Bridges,* for respondent Carolyn Malott.

McCORMAC, P.J. James W. Malott was killed when he fell from a scaffold while working as a painter for relator, Lyburn Construction Company. The widow-claimant, Carolyn Malott, made application for death benefits which was allowed by the Industrial Commission and paid without appeal.

Claimant then filed an application seeking an additional award for violation of a specific safety requirement. The Industrial Commission allowed the application, finding that the employer had violated IC-3-07.03(A).

The employer has commenced a mandamus action in this court seeking a writ of mandamus requiring the Industrial Commission to vacate its order holding it liable for violation of a specific safety violation. Relator contends that the Industrial Commission abused its discretion in making that finding.

Respondents have denied any abuse of discretion.

The evidence before this court is the

Industrial Commission claim file of James W. Malott.

On August 30, 1979, Lyburn Construction ordered James W. Malott, and another employee, James Bookheimer, to paint the newly constructed centrifuge building at the Columbus Sewage Treatment Plant. While the two employees were painting from a scaffolding, the platform collapsed, causing the men to fall. There is ample evidence that the scaffolding on which Malott and his fellow employee were painting was not securely fastened in place as mandated by the specific safety requirement of IC-3-07.03 (A). However, relator contends that Lyburn Construction should not be charged with the specific safety violation because it neither constructed nor maintained the scaffolding in question. It is undisputed that the scaffolding was erected by the Dugan and Myers Construction Company, the contractor doing the cement finishing at the job, and that the scaffolding had been left by that company for the use of Lyburn Construction for painting.

It is not necessary that an employer own a noncomplying device in order to be held responsible for violation of a specific safety standard in regard to the involved equipment. If the employer has control over or responsibility for the noncomplying device, the employer may be held accountable for a specific safety violation. See State, ex rel. Reed, v. Indus. Comm. (1965), 2 Ohio St. 2d 200 [31 O.O.2d 408], where the Ohio Supreme Court held the converse to be true; that is, that an owner who neither owns nor is responsible for the condition or maintenance of a device used by his employees in doing work for the owner of the device is not responsible if the device is violative of a specific safety requirement. In Reed, there was no evidence to show that the employer knew, or had reason to believe, that the construction and maintenance of the device violated a specific safety standard. The employer did not create the faulty device and had no authority to alter or correct it.

In State, ex rel. Warr, v. Indus. Comm. (1977), 49 Ohio St. 2d 268 [3 O.O.3d 407], the Ohio Supreme Court held that the Industrial Commission did not abuse its discretion in denying an additional award for violation of a specific safety requirement where there was no evidence that the employer was in control of the area of a building where there was an opening that was not guarded as specifically required. In State, ex rel. Zito, v. Indus. Comm. (1980), 64 Ohio St. 2d 53 [18 O.O.3d 257], an employee fell from a defective scaffold, which was owned and erected by a subcontractor of his employer. His application for violation of a specific safety requirement was denied on the basis that his employer did not construct the scaffold from which he fell. The Ohio Supreme Court held that the negative implication of Reed is that an employer who owns or is responsible for the condition and maintenance of a device used by his employee is an employer who is potentially liable for violation of a specific safety standard. It was held that in the case of a general contractor it may be found that there is authority to alter or construct any deficiencies on the entire construction site, and thus, there may exist the requisite degree of responsibility to warrant imposition of a specific safety requirement violation on that employer as one responsible for the condition and maintenance of the device.

The issue then is whether there is some evidence in this file that Lyburn Construction had sufficient responsibility for the condition and maintenance of the scaffolding used by its employee to find the employer liable for a violation of a specific safety requirement.

The widow-claimant stated that the deceased's fellow worker on the scaffold was James Bookheimer, who was designated as foreman in her application.

Bookheimer's affidavit inferentially supports this allegation because he states that the deceased tried to push the ladder out to paint behind it, causing the scaffolding, which was not securely fastened as required by IC-3-07.03(A), to collapse. Bookheimer states that the deceased was told not to do this, inferentially by him. The special investigator's report refers to Bookheimer as a fellow painter (which he was, even if he were also the foreman). There is further evidence that Bookheimer and Malott had borrowed the scaffold from another subcontractor and had devised their own method of using it in a free-standing manner, which contributed to the accident. There is no specific evidence that Bookheimer was the foreman; however, the employer submitted no evidence to the contrary. Obviously, the deceased and Bookheimer had to be provided with some equipment by their employer to paint the building.

There is some evidence that Lyburn Construction had control over and was responsible for the manner in which the scaffolding was used. Inferentially, Bookheimer was in charge and made the decision concerning how the unsecured scaffolding would be used. Certainly an employer cannot evade responsibility for violation of a specific safety requirement by borrowing defective equipment and ordering its employees to use that equipment knowing that the equipment is defective or shutting its eyes to that fact. There is some evidence that Bookheimer was responsible for the manner in which the scaffolding was used. A corporation acts only through its employees. The scaffolding was borrowed, but it was used at the time exclusively to further the purposes of Lyburn Construction which had responsibility to see that the borrowed scaffolding complied with the Industrial Commission's safety standards.

The writ of mandamus is denied.

*Writ denied.*

WHITESIDE, J., concurs.

MOYER, J., dissents.

MOYER, J., dissenting. I respectfully dissent from the majority opinion for the following reasons. An employer may be responsible for an additional award for a specific safety standard only where it is shown that the employer has failed to comply with the requirement and that failure to comply caused the injury in question. *State, ex rel. Reed,* v. *Indus. Comm.* (1965), 2 Ohio St. 2d 200 [31 O.O.2d 408]; *State, ex rel. Whitman,* v. *Indus. Comm.* (1936), 131 Ohio St. 375 [6 O.O. 88]. The majority uses a series of inferences to impose a penalty upon Lyburn Construction Company, which was a subcontractor on the job. The basing of an additional award which is in the form of a penalty upon such inferences finds no support in statutory or case law. The test for determining whether an employer is liable for the penalty where the employer did not construct the faulty equipment is found in *State, ex rel. Reed,* v. *Indus. Comm.,* *supra,* and *State, ex rel. Zito,* v. *Indus. Comm.* (1980), 64 Ohio St. 2d 53 [18 O.O.3d 257], as asserted in the majority opinion. However, the test is misapplied to the facts in this case. There is no evidence that Lyburn knew of the defect or that Lyburn had any authority to correct the defect if it knew about it. To infer that Bookheimer was a foreman and to also infer that he warned decedent about the faulty scaffolding is a new application of the test in determining whether an employer should be assessed a penalty. There is no evidence that Lyburn had any control over the job site or that anyone other than the two painters was aware that the scaffolding was not attached to the building. As the Supreme Court stated in its syllabus in *Reed:*

"An employer who neither owns nor is responsible for the condition and maintenance of a device used by his

employee in doing work for the owner thereof, which device as constructed is violative of a specific safety requirement imposed by law or by an order of the Industrial Commission, and the employee is injured in its use and because of its condition, such employer is not the 'employer' comprehended by Section 35, Article II of the Constitution of Ohio, for whose disregard of a specific safety requirement the Industrial Commission is empowered to make an additional compensation award to the injured employee."

Because I do not agree that the Supreme Court has held that a subcontractor should be liable for a penalty where there is no evidence that the subcontractor had any control over the job site or was responsible for the specific safety violation, I would grant the writ.