THE STATE, EX REL. LYBURN CONSTRUCTION COMPANY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Lyburn Constr. Co., *v.* Indus. Comm. (1985), 18 Ohio St. 3d 277.]

(No. 84-797—Decided July 24, 1985.)

*Vorys, Sater, Seymour & Pease, Robert E. Tait* and *P. Douglas Barr,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Lee M. Smith* and *Michael L. Squillace,* for appellee Industrial Commission.

*Ward, Kaps, Bainbridge, Maurer, Bloomfield & Melvin* and *Robert L. Bridges,* for appellee Carolyn Malott.

*Per Curiam.* The issue presented herein is whether the court of appeals abused its discretion in denying the requested writ. We conclude that no abuse has been shown, and thus we affirm the judgment of the court of appeals.

Compensation for specific safety requirement violations under the workers' compensation system is based on Section 35, Article II of the Ohio Constitution. This section states in pertinent part:

"* * * [The Industrial Commission] shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirment for the protection of the lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final * * *."

Since final jurisdiction of these claims rests in the commission, a reviewing court may only reverse upon the showing of an abuse of discretion. *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15 [58 O.O.2d 70]. An abuse of discretion is present only "[w]here there is no evidence upon which the commission could have based its factual conclusion * * *." *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 167 [22 O.O.3d 400].

In order to find Lyburn in violation of a specific safety requirement, it is not enough to show that one of its employees was injured as a result of a violation. It must also be shown that Lyburn itself is the employer which violated the requirement. *State, ex rel. Whitman,* v. *Indus. Comm.* (1936), 131 Ohio St. 375 [6 O.O. 88]. Though this seems simplistic, the application of this principle often is not, as case law has evidenced.

It is not necessary that an employer own a noncomplying device in order to be held responsible for injuries caused to its employees by violation of a specific safety requirement. *State, ex rel. Reed,* v. *Indus. Comm.* (1965), 2 Ohio St. 2d 200 [31 O.O.2d 408]. In *Reed, supra,* this court held the following in its syllabus:

"An employer who neither owns *nor is responsible* for the condition and maintenance of a device used by his employee in doing work for the owner thereof, which device as constructed is violative of a specific safety requirement imposed by law or by an order of the Industrial Commission, and the employee is injured in its use and because of its condition, such employer is not the 'employer' comprehended by Section 35, Article II of the Constitution of Ohio, for whose disregard of a specific safety requirement the Industrial Commission is empowered to make an additional compensation award to the injured employee." (Emphasis added.)

The *Reed* court reasoned at 203 that a company which had no "authority to alter or correct" a defective condition should not be unfairly termed the employer for purposes of a safety violation.

The converse was held to be true in *State, ex rel. Zito,* v. *Indus. Comm.* (1980), 64 Ohio St. 2d 53 [18 O.O.3d 257], where the court stated at 55: "The negative implication of our holding in *Reed* is that an employer who owns or is responsible for the condition and maintenance of a device used by his employee is an 'employer' potentially liable under Section 35 of Article II." In *Zito,* this court held that a general contractor may have the re-

quisite degree of responsibility to justify imposition of employer status when scaffolding constructed by a subcontractor proves defective. The court reiterated the "authority to alter or correct" standard found dispositive in *Reed*.

Thus, the "authority to alter or correct" is a primary factor in determining who is the responsible party.

Lyburn argues that it was not responsible for the condition of the scaffolding herein, and that *Reed* and *Zito* require the writ to be granted. We find, however, that evidence exists on which the commission could have based its conclusion. Lyburn had sufficient "authority to alter or correct" the scaffolding violation, unlike the employer in *Reed*. In fact, the employees themselves modified the structure by adding ladders and a platform.

An employer will not be permitted to escape Section 35 employer status by simply not checking to see whether borrowed equipment is fit for the purpose for which it is borrowed. Lyburn sent its employees to the worksite with knowledge of the need for structural aid to assist in painting. It would be unfair to allow Lyburn to escape employer status merely because it did not take the time to discover the condition of that structural aid.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. I dissent due to a lack of evidence to support the Industrial Commission's findings that relator violated IC-3-07.03(A).

The facts show that the painters put one of their ladders on top of the scaffold so that the base of the ladder was secured to the scaffold top, while the top of the ladder was against the wall to be painted. The placement of the platform between the two ladders created a constant pressure against the top of the scaffold. When one of the painters moved the ladder top, the resulting vibrations caused the unsecured scaffold to kick out, away from the building, allowing the painters and equipment to collapse. These facts by themselves do not show that relator, itself, violated the safety requirement.

The majority completely misinterprets the Ohio Constitution and the legislative intent behind the statutes relative to violations of specific safety requirements. The statutes, in conformity with Section 35, Article II of the Ohio Constitution, were enacted to prevent employers from utilizing faulty and dangerous instrumentalities in derogation of the health and

safety of their employees. These specific mandates are only violated when the employer knowingly fails to comply with the safety requirements.

The evidence presented below established that relator neither owned nor was responsible for the condition and maintenance of the scaffold. See *State, ex rel. Reed,* v. *Indus. Comm.* (1965), 2 Ohio St. 2d 200 [31 O.O.2d 408]. There was no evidence that relator knew the scaffold was unsecured. Further, both the scaffold and job site were in the control of the general contractor, not the subcontracting relator. There is clearly no evidence in the record that relator had any authority to correct the scaffold.

In the absence of evidence on these crucial elements, I would reverse the judgment of the court of appeals.