**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 471.]**

THE STATE EX REL. G & S METAL PRODUCTS, INC., APPELLEE, *v*. MOORE, APPELLANT, ET AL.

[Cite as *State ex rel. G & S Metal Products, Inc. v. Moore*, 1997-Ohio-137.]

*Workers' compensation—-Violation of a specific safety requirement—VSSR penalties may be imposed with prior notice and noncompliance with express specific safety requirements—Ohio Adm.Code 4121:1-5-11(E)(4) does not expressly require that employers conduct maintenance inspections on a weekly basis.*

(No. 95-545—Submitted May 20, 1997—Decided September 24, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD11-1513.

————————————

{¶ 1} In 1993, the Industrial Commission of Ohio granted Laverne Moore, appellant, an additional workers' compensation award for the violation of a specific safety requirement ("VSSR") by her employer, appellee G & S Metal Products, Inc. ("G & S"). After its request for reconsideration was denied, G & S obtained a writ of mandamus from the Court of Appeals for Franklin County ordering the commission to vacate Moore's VSSR award. Moore now appeals, seeking denial of the writ and reinstatement of the commission's order.

{¶ 2} On October 13, 1989, Moore's right hand was crushed while she was operating a metal press for G & S. The press was equipped with safety "pull-back cables," but they failed to remove her hand from the "danger zone" before the ram descended. Moore's claim was allowed for "amputation right four fingers and right thumb injury; post-traumatic stress disorders and major depression with anxiety." She timely applied for additional compensation, alleging that G & S had violated Ohio Adm.Code 4121:1-5-11(E), a specific safety requirement ("SSR")

necessitating guards for hydraulic and pneumatic press operators. Based on its hearing officer's findings, the commission granted the award, explaining:

"* * * [I]t is found that claimant was employed as a press operator; that she was operating a * * * Komatsu * * * Power Press purchased October 26, 1981; that such press was equipped with a Posson[s] Model * * * safety device * * * ; that such device would pull her hands out of the danger zone each time the ram descended; that the safety device was adjusted for each operator at the beginning of each shift prior to operating the press; that after beginning work on the day of the injury, the pull backs were again adjusted after claimant complained that the press was mis-striking the stock; that claimant would place stock into the impact area, depress a protected foot pedal to initiate the operating cycle, the ram would descend, the pull-backs would pull claimant's hands back, the die would strike the stock, as the die rose, an air pressure device would eject the formed product from the press, and the operation would be repeated, at a tempo of approximately four seconds for each complete evolution; that while so engaged the ram descended striking claimant's hand and causing the injuries allowed herein; that immediately afterward, the connecting cable between the pull back apparatus and the ram was seen to have come loose from the clamp in the connecting apparatus, and to have been frayed at the spot where it was connected to the clamp; that such clamp and frayed cable portion [were] located underneath a removable guard; that the Instruction Manual furnished employer by the manufacturer of the safety device specifies that weekly inspection of the COMPLETE safety device should be made (in addition to daily visual inspection of certain parts), and includes cables and clamps in the listing of parts to be inspected; that no such inspections were made after the July, 1989 servicing of the device. The evidence as to what caused the ram to descend is mixed. Based particularly upon the evidence from other press operators that the tripping pedal was easy to trip with very little pressure, the rapid rhythmic movements of claimant with her foot constantly being in contact with the

pedal; the employer's accident report description of '* * * hand was missing after cycling with foot pedal. Hand caught in press during cycle'; and claimant's initial description at hearing of the 'repeat cycle malfunction' as 'the pullback was acting funny and the pans was smashing' and later '* * * it wasn't shaping them like they normally would * * *'; it is held that such constitutes a preponderance of proof to find that claimant initiated the operating cycle causing the ram to descend. Claimant's tendency at hearing to agree with whatever differing description of 'repeat cycle malfunction' was suggested by leading questions from both representatives and the Hearing Officer, combined with her spontaneous emphasis upon the malformation of the pans after the completion of the normal operating cycle and the 'jumping around of the press' leads to the conclusion that there is less than a preponderance of persuasive evidence that the press double-tripped when claimant was injured.

"Claimant alleges violation of OAC 4121:1-5-11(E)(1) through (6), Hydraulic or Pneumatic Presses, which requires the guarding of such presses by one of the six acceptable methods listed. Due to the general language employed, OAC 4121:1-5-119(E) [sic] is held to be applicable.

"Inasmuch as the press was equipped with pull-guards, as such are described in subsection (4), subsection (4) is held to be applicable * * *. Subsection (4) requires that the movement of the ram pull the operator's hands from the danger zone during the operating cycle. It having been found that the claimant had initiated the stroke, and that consequently she was injured during the operating cycle, the pull back having failed to pull her hand clear of the ram, OAC 4121:1-5-11(E)(4) is held to have been violated, and such violation to have been the proximate cause of claimant's injury."

{¶ 3} In denying G & S's motion for rehearing, the commission adopted the findings of another hearing officer, including:

SUPREME COURT OF OHIO

"Rule 4121:1-3-20(G) [*sic*, 4121-3-20(G)] holds that rehearing can be granted if a party submits relevant new and additional proof not previously considered, or if the order was based on an obvious mistake of fact.

"Since the employer has not submitted any new and additional proof, the only other basis for granting a rehearing in this case is if the order was based on an obvious mistake of fact. Therefore, the employer's first argument that the Hearing Officer committed a mistake of law in not citing the fact that the safety violation found was derived from a safety requirement adopted by the General Assembly or the Industrial Commission is not a proper basis for granting a rehearing as that omission is a legal, not factual error.

"The employer's second argument is that the Hearing Officer's apparent conclusion that the cable operating the pullback device snapped due to the cable being worn out and not properly inspected was a mistake of fact. Because the employer contends that the cable broke because the device was misadjusted, and not because of a lack of inspection or the cable being worn out. [*Sic.*]

"Based on a review of the file, the reason the cable snapped is still unclear. Certainly there was some evidence for the Hearing Officer to conclude that the cable snapped because of lack of weekly inspections and the fact [that] the cable and other parts may have worn out. Some evidence is established by the Hearing Officer's citation to the Instruction Manual for this device requiring complete weekly inspections of the device which were not done in this case, and his reference to knowledge on the part of the employer that the device was subject to deterioration caused by the natural wear and tear of the device.

"While the employer feels that the cable snapped because the device was misadjusted[,] nevertheless, there is sufficient evidence for the Hearing Officer to conclude [that] the cable snapped for other reasons as explained above. * * * [S]ince the Hearing Officer's conclusion as to the reasons why the cable snapped is

supported by some evidence, it is ruled [that] there is no 'obvious' mistake of fact regarding the reason the cable device failed."

{¶ 4} In the court of appeals, G & S argued that it had not committed a VSSR because (1) the Possons pullback installation manual recommended, but did not require, weekly safety inspections; (2) even if such inspections had been essential, provisions in an installation manual that have not been codified by the General Assembly or promulgated by the commission are not SSRs; (3) no evidence established that the failure to inspect caused Moore's injury; and (4) no VSSR liability follows from a single, unexpected equipment malfunction as occurred in this case. A court of appeals referee agreed that the failure to follow recommendations in an installation manual does not constitute an SSR and that G & S had insufficient notice to be held responsible for the single malfunction of the Possons pullback device. The referee recommended that a writ of mandamus be issued to vacate Moore's VSSR award. The court of appeals, with one judge dissenting, overruled objections, adopted the referee's report, and issued the writ.

{¶ 5} The cause is before this court upon an appeal as of right.

_____

*Duvin, Cahn & Hutton* and *Vincent T. Norwillo*, for appellee G & S Metal Products, Inc.

*Friedman & Stern* and *Mitchell A. Stern*, for appellant.

_____

***Per Curiam.***

{¶ 6} Moore argues that G & S committed a VSSR by failing to conduct weekly inspections, in accordance with the manufacturer's instructions, of press pull guards installed to comply with Ohio Adm.Code 4121:1-5-11(E)(4). For the reasons that follow, we disagree and affirm the court of appeals' judgment.

{¶ 7} Ohio Adm.Code 4121:1-5-11(E) provides:

"Every hydraulic or pneumatic (air-powered) press shall be constructed, or shall be guarded, to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle. Acceptable methods of guarding are:

"* * *

"(4) Pull guard—attached to hands or wrists and activated by closing of press so that movement of the ram will pull the operator's hands from the danger zone during the operating cycle[.]"

{¶ 8} Moore contends that G & S violated this regulation when it did not comply with the following provision on the manufacturer's instruction card for installing the pull guard on a press:

"(14) Frequent and regular inspection of the safety device is recommended:

"* * *

"(b) Maintenance check on equipment once a week."

{¶ 9} The gravamen of Moore's claim is that when an SSR calls for the installation of special equipment, such as the pull guard required by Ohio Adm.Code 4121:1-5-11(E)(4), a duty to adequately inspect and maintain the equipment is inherent in the requirement. Moore also argues, in essence, that the equipment manufacturer's instructions, found here on the pull guard installation card, are the standard for measuring the adequacy of an employer's efforts to inspect and maintain equipment. Thus, she asserts that noncompliance with safety instructions for inspecting and maintaining SSR equipment is tantamount to violation of the requirement itself.

{¶ 10} The commission apparently subscribed to this theory, but the court of appeals was not convinced. It observed that the pull guard installation instructions recommended, but did not require, weekly inspections and that these terms are not interchangeable. The court refused to interpret "recommended" as meaning "required." To do so would violate the rule that SSRs, being the basis for penalizing noncomplying employers, are to be construed, where reasonable, against

applicability to the employer. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216, 1219. The court of appeals thus rejected Moore's argument that Ohio Adm.Code 4121:1-5-11(E)(4) incorporates a weekly inspection requirement and that G & S had committed a VSSR by failing to comply.

{¶ 11} Moore cites *State ex rel. Reed v. Indus. Comm.* (1965), 2 Ohio St.2d 200, 31 O.O.2d 408, 207 N.E.2d 755, and *State ex rel. Zito v. Indus. Comm.* (1980), 64 Ohio St.2d 53, 18 O.O.3d 257, 413 N.E.2d 787, to establish the duty to adequately inspect and maintain any equipment required by an SSR. Her reliance is misplaced. *Zito* and *Reed* examined the relationship of contractors and subcontractors, their equipment, and their respective liability for VSSRs resulting in their employees' injuries. The decisions in those cases suggested that contractors and subcontractors may be liable as employers for VSSR penalties when they have authority to alter or correct the condition of equipment that results in a VSSR injury, a holding we recently confirmed in *State ex rel. Newman v. Indus. Comm.* (1997), 77 Ohio St.3d 271, 673 N.E.2d 1301. The implication that those who exercise control over equipment may be liable for a VSSR, however, does not expand an employer's duty beyond what has always been required: compliance with the express terms in an SSR.

{¶ 12} G & S, on the other hand, cites legitimate authority for the argument that a VSSR results only when an employer's acts contravene express statutory or regulatory provisions. *State ex rel. Trydle v. Indus. Comm.* (1972), 32 Ohio St.2d 257, 61 O.O.2d 488, 291 N.E.2d 748, paragraphs one and two of the syllabus, narrowly defined SSRs as standards of conduct that are prescribed by statute or by the commission to plainly apprise an employer of his legal obligation to his employees. And *State ex rel. Ish v. Indus. Comm.* (1985), 19 Ohio St.3d 28, 19 OBR 24, 482 N.E.2d 941, justifies G & S's strict reading of SSRs, holding that an employer does not commit a VSSR by failing to comply with industry standards that neither the General Assembly nor the commission has adopted.

{¶ 13} We have held that SSRs must "forewarn the employer and establish a standard which [the employer] may follow." *State ex rel. Howard Eng. & Mfg. Co. v. Indus. Comm.* (1947), 148 Ohio St. 165, 35 O.O. 183, 74 N.E.2d 201, paragraph one of the syllabus. Ohio Adm.Code 4121:1-5-11(E)(4) simply does not require maintenance inspections on a weekly basis. If we were to read a weekly inspection requirement into the rule, we would unfairly dispense with the notice requirement. Moreover, the commission has promulgated SSRs that specifically incorporate manufacturer instructions requiring inspection and repair of certain industrial equipment, see *State ex rel. Morrissey v. Indus. Comm.* (1985), 18 Ohio St.3d 285, 287, 18 OBR 336, 338, 480 N.E.2d 810, 812 (administrative rule required that portable explosive-actuated fastening tools be "repaired in accordance with the manufacturer's specifications"), but Ohio Adm.Code 4121:1-5-11(E)(4) is not such a rule. Thus, by imposing the duty Moore proposes, we would also encroach upon the commission's rulemaking authority.

{¶ 14} This is not to say, however, that the commission can never consult manufacturer specifications in evaluating an employer's compliance with SSRs. As the court of appeals recognized, a manufacturer's manual is sometimes relevant to the commission's determination of whether an employer violated a specific safety requirement. Thus, in *State ex rel. Martin Painting & Coating Co. v. Indus. Comm.* (1997), 78 Ohio St.3d 333, 678 N.E.2d 206, we approved of the commission's consideration of manufacturer specifications for the proper construction of a scaffold required by an SSR.

{¶ 15} In *Martin Painting*, an SSR directed that industry scaffolds support four times their maximum rated load, but it did not specify exactly how to brace the scaffold for this weight. After two employees were killed when a scaffold fell, the commission found that the employer had committed a VSSR by failing to provide adequate counterweight in accordance with the manufacturer specifications, even though the SSR did not mention counterweights. We determined that the VSSR

award was not an abuse of discretion to be corrected in mandamus because adequate counterweight was "implicit in the satisfaction of" the applicable SSR. *Id.,* 78 Ohio St.3d at 339, 678 N.E.2d at 211.

{¶ 16} The logical, albeit unstated, rationale for *Martin Painting* is that when a duty to install safety equipment is established by an SSR and an industrial injury results from an employer's failure to follow manufacturer specifications essential to the operation of the safety equipment, it is as if the employer had no safety equipment at all, and the employer's faulty construction or installation can produce VSSR liability. The same is not true for properly installed or constructed safety equipment that is not maintained in accordance with every detail of a manufacturer's maintenance and inspection instructions. SSR equipment may perform its essential function despite the employer's failure to perfectly comply with such instructions. Thus, *Martin Painting* does not stand for the proposition that manufacturer instructions are considered an inherent part of an SSR. Instead, *Martin Painting* establishes that VSSR liability may lie when failure to comply with manufacturer instructions frustrates the equipment's ability to perform its essential safety function.

{¶ 17} VSSR penalties may be imposed with prior notice and noncompliance with express SSR provisions. Ohio Adm.Code 4121:1-5-11(E)(4) does not expressly require that employers conduct maintenance inspections on a weekly basis. Accordingly, we affirm the court of appeals' judgment that G & S has no VSSR liability.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., dissent and would reverse the judgment of the court of appeals.

———————————