THE STATE EX REL. MAHONEY, APPELLEE, *v.* TEAM AMERICA
3, INC.; WANNER METAL WORX, INC. ET AL., APPELLANTS.

[Cite as *State ex rel. Mahoney v. Team Am. 3,
Inc.,* 99 Ohio St.3d 532, 2003-Ohio-4830.]

(No. 2002–0247—Submitted June 4, 2003—Decided September 24, 2003.)

LUNDBERG STRATTON, J.

{¶ 1} Appellee, John T. Mahoney ("claimant"), was injured in the course and scope of his employment on October 21, 1998. At the time, the claimant was an employee of Team America 3, Inc., a temporary-employment agency that furnished laborers to its customer, Wanner Metal Worx, Inc. ("Wanner"). The injury occurred while the claimant and other workers were restoring the exterior of an office building. The Sherman Smoot Construction Company ("Smoot") was the general contractor on the project.

{¶ 2} Smoot had erected two adjacent scaffolds on the west side of the building where workers were replacing the building's stone facade. One scaffold extended approximately from the midpoint of the building to its north end. The other scaffold was four to six floors higher than the first scaffold and extended from the midpoint southward. Smoot employees on the upper scaffold were cutting stone from the building's facade, so in addition to the standard toeboards and guardrails required of such scaffolds, the upper scaffold also had 42–inch–high plywood attached to its sides in an attempt to keep any falling stone contained within the upper scaffold.

{¶ 3} At the time of the incident, the claimant and Wanner's foreman, Gary Walter, were working on the lower scaffold. A piece of stone dropped from the upper scaffold work area and struck the claimant's neck and back of his head. He filed a workers' compensation claim, which was allowed.

{¶ 4} The claimant also filed an application for an additional award for violation of a specific safety requirement ("VSSR"). He alleged violations of Ohio Adm. Code 4121:1–3–10(C)(4)(b) (failure to have guardrail on all open sides of a scaffold) and 4121:1–3–10(C)(12) (failure to provide overhead protection for employees on a scaffold exposed to hazards from overhead). He amended his application to add an alleged violation of Ohio Adm.Code 4121:1–3–03(J)(1) (failure to provide safety belts and lifelines for employees exposed to hazards of falling).

{¶ 5} The Bureau of Workers' Compensation investigated the incident. Wanner hired safety consultant James Vaughan who submitted an affidavit of his findings. Following a hearing, the Industrial Commission denied the claimant's application. First, the commission determined that the VSSR application would be considered against Wanner, not Team America 3, because it was Wanner that retained supervision and control over the working conditions and equipment, citing *State ex rel. Reed v. Indus. Comm.* (1965), 2 Ohio St.2d 200, 31 O.O.2d 408, 207 N.E.2d 755, and *State ex rel. Newman v. Indus. Comm.* (1997), 77 Ohio St.3d 271, 673 N.E.2d 1301.

{¶ 6} Next, the commission concluded that Wanner had not violated Ohio Adm.Code 4121:1–3–10(C)(4)(b) or 4121:1–3–03(J)(1), because it had provided guardrails and toeboards on the three exposed sides of the scaffolds as required and had also provided the necessary safety belts and lifelines.

{¶ 7} Finally, the commission also concluded that there was no violation of Ohio Adm.Code 4121:1–3–10(C)(12) regarding overhead protection. Wanner had demonstrated that there existed four types of overhead protection: "a hardhat, toeboards on the upper scaffold, plywood barriers and, as per the testimony of Mr. [Ronald] Morgan [Wanner's field superintendent], a safe zone where employees on the lower scaffold were not to work at the southern end of their scaffold when the workers on the upper scaffold were working at the northern end of their scaffold."

{¶ 8} The claimant petitioned the court of appeals for a writ of mandamus ordering the commission to allow his application. A magistrate concluded that the commission did not abuse its discretion, because the record contained some evidence that overhead protection had been provided. The claimant objected to the magistrate's decision. The court of appeals agreed with the magistrate that the four precautions established by Wanner were legitimate safety precautions. Nevertheless, the court concluded that "they do not constitute overhead protection for workers on a scaffold which has literally nothing directly overhead." Consequently, the court granted a writ of mandamus compelling the commission to vacate its order and to enter an order finding a violation of Ohio Adm.Code 4121:1–3–10(C)(12).

{¶ 9} This matter is now before this court upon an appeal as of right.

{¶ 10} Appellants, Wanner and Industrial Commission, contend that the appellate court improperly substituted its judgment for that of the commission when it determined that there was a violation of Ohio Adm.Code 4121:1–3–10(C)(12). Appellant Wanner also contends that the court of appeals violated Wanner's constitutional right to due process when it assessed a VSSR penalty against Wanner when it was not a party to the underlying workers' compensation claim. We address Wanner's due process argument first.

{¶ 11} Wanner contends that it was denied due process because it was not the employer in claimant's underlying workers' compensation claim. We rejected this same argument in *State ex rel. Newman v. Indus. Comm.* (1997), 77 Ohio St.3d 271, 274, 673 N.E.2d 1301 (Lundberg Stratton, J., concurring). A VSSR claim is separate and distinct from a workers' compensation claim. From the moment that claimant filed his VSSR application, Wanner participated fully in all aspects of the litigation, both administratively and judicially. Thus, there is no due process violation.

{¶ 12} We now turn to appellant's argument that the court of appeals improperly substituted its judgment for the commission's by granting a writ of mandamus.

{¶ 13} To be entitled to a writ of mandamus, the claimant had to show that the commission abused its discretion by issuing an order that is not supported by some evidence. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 171, 545 N.E.2d 1216. When the record contains some evidence to support the commission's factual findings, a court may not disturb the commission's findings in mandamus. *State ex rel. Fiber–Lite Corp. v. Indus. Comm.* (1988), 36 Ohio St.3d 202, 522 N.E.2d 548, syllabus.

{¶ 14} The narrow issue before us is whether the four types of protection demonstrated by the employer constitute some evidence to support the commission's decision that there was no violation of Ohio Adm.Code 4121:1–3–10(C)(12). This specific safety requirement is one of the Administrative Code's requirements for all scaffolds. It states: "Overhead protection shall be provided for employees on a scaffold exposed to hazards from overhead." The code does not define "overhead protection."

{¶ 15} The court of appeals interpreted the code as requiring protection directly overhead of the workers. The code, however, does not state that requirement, and it should not be read that narrowly. Ohio Adm.Code 4121:1–3–10(C)(12) does not specify the means of compliance. Rather, it is a general requirement that the employer take the necessary precautions to provide reasonable protection for its employees exposed to overhead hazards while working on a scaffold.

{¶ 16} Nevertheless, the claimant contends that Wanner did not provide any overhead protection and instead relied on the actions taken by Smoot on the upper scaffold. While it is true that the ultimate responsibility for failing to comply with a specific safety requirement remains with the employer, *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 544 N.E.2d 887, that does not mean that the employer cannot enlist others to help provide the protection. Morgan, field superintendent for Wanner, testified that he worked with Smoot to make sure that steps were taken to protect workers on the lower scaffold from falling debris. Morgan testified that Smoot agreed to equip the upper scaffold with plywood barriers to catch debris. Morgan also testified that Wanner and Smoot employees established a safe zone on the lower scaffold when Smoot workers were working near the end of the upper scaffold.

{¶ 17} Here, Wanner did not delegate its ultimate responsibility of providing overhead protection but took steps to ensure that protections were in place, albeit by Smoot on Smoot equipment. Had Smoot failed to provide those safeguards, Wanner would be held accountable.

{¶ 18} It is impossible to prevent all accidents and protect against all contingencies at the workplace. Although a canopy, net, or other protection directly overhead may have provided better protection, that does not mean that the protections used did not satisfy the regulation. A specific safety requirement need not provide foolproof protection; its purpose is to provide *"reasonable,* not absolute, safety for employees." (Emphasis sic.) *State ex rel. Jeep Corp. v. Indus. Comm.* (1989), 42 Ohio St.3d 83, 84, 537 N.E.2d 215. Here, the contractors worked together to provide protection for workers on the lower scaffold by putting protections on the upper scaffold to catch debris. The specific safety requirement affords discretion to the employer to determine the means by which to protect employees. It does not mandate that a cover be directly overhead the employees.

{¶ 19} A specific safety requirement must "adequately appris[e] the employer of its duty towards employees." *State ex rel. Jeep Corp.,* 42 Ohio St.3d at 84, 537 N.E.2d 215. The court of appeals' interpretation of the requirement does not meet this standard. Furthermore, because a VSSR award is a penalty, "it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer." *State ex rel. Burton v. Indus. Comm.,* 46 Ohio St.3d at 172, 545 N.E.2d 1216.

{¶ 20} "The interpretation of a specific safety requirement is within the final jurisdiction of the commission." Id. The commission's order was supported by some evidence that Wanner provided overhead protection for its workers. Therefore, we hold that the commission did not abuse its discretion in finding that the employer satisfied the requirement of providing overhead protection.

{¶ 21} Based on the foregoing, we reverse the judgment of the court of appeals and reinstate the Industrial Commission's order.

Judgment reversed
and order reinstated.

MOYER, C.J., O'CONNOR and O'DONNELL, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

F.E. SWEENEY, J., dissents and would affirm the judgment of the court of appeals.

---

**PFEIFER, J., dissenting.**

{¶ 22} I dissent. Wanner Metal Worx, Inc. provided no overhead protection on its scaffold. Ohio Adm.Code 4121:1–3–10(C)(12) specifically states:

{¶ 23} "Overhead protection shall be provided for employees on a scaffold exposed to hazards from overhead."

{¶ 24} I agree that Sherman Smoot Construction Company, the general contractor, took precautions to limit the amount of debris that fell from around its scaffold. In that way, it limited the hazard posed by objects that might rain down upon people or property below. However, the debris that did manage to fall from the Smoot scaffold constituted a hazard. Testimony showed that falling debris was not infrequent. Smoot did something to limit the hazard, but a hazard still existed.

{¶ 25} What kind of overhead protection did Wanner provide its workers it knew were "exposed to hazards from overhead"? None. Wanner workers were on scaffolds which, as the appellate decision points out, "ha[d] literally nothing overhead."

{¶ 26} Wanner argues that it created a "safe zone" between its scaffolds "to minimize the possibility that workers on the lower scaffold would be struck by falling debris from work on the upper scaffold." That may have been an acceptable precaution (as good as saying, "Be careful out there, guys"), but it did not provide the *overhead* protection required by the regulation. The safety zone was not over the heads of the Wanner workers. Nothing was.

{¶ 27} Smoot tried to prevent hazards, but the hazards came. Wanner provided nothing to protect Mahoney from them. Therefore, I would affirm the court of appeals' decision.

RESNICK, J., concurs in the foregoing dissenting opinion.

Stanley R. Jurus Law Office and John R. Workman, for appellee.

Jim Petro, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for appellant Industrial Commission of Ohio.

Kegler, Brown, Hill & Ritter, Timothy T. Tullis and David M. McCarty, for appellant Wanner Metal Worx, Inc.

Schottenstein, Zox & Dunn, Roger L. Sabo and John J. Krimm Jr., urging reversal for amicus curiae Associated General Contractors of Ohio.

Kegler, Brown, Hill & Ritter and Donald W. Gregory, urging reversal for amicus curiae American Subcontractors Association.