OPINION
{¶ 1} This is an appeal from a decision of the Stark County Court of Common Pleas which affirmed the denial of unemployment compensation benefits by the Review Commission of the Department of Job and Family Services.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The facts indicate that Appellant was on the payroll of Snelling Personnel Search (Snelling) from March, 2002, through July, 2002.
 {¶ 3} The business of Snelling is to provide employees when needed to various employers.
 {¶ 4} Appellant was placed with Lindsay Excavating Concrete (Lindsay) on April 22, 2002, as a laborer.
 {¶ 5} On July 22, 2002, Appellant became an employee of Lindsay as a truck driver and ceased placement with Snelling and payment of wages by it.
 {¶ 6} Due to an accident as a truck driver for Lindsay, Appellant was discharged on August 1, 2002.
 {¶ 7} Following Appellant's application for unemployment compensation benefits, the Director found that Appellant quit his employment with Snelling to accept other employment which did not qualify as a "just cause" quit, and that the statutory requirements of R.C. 4141.291 were not met.
 {¶ 8} The findings were also to the effect that the termination by Lindsay was for just cause.
 {¶ 9} On appeal, such initial determination was affirmed.
 {¶ 10} A further appeal to the Review Commission resulted in affirmation as to the separation from Snelling but reversed the just cause finding as to the discharge from Lindsay. However, as Appellant was employed by Lindsay for less than three weeks, he was still denied benefits.
 {¶ 11} Appellant then appealed such denial to the Stark County Court of Common Pleas which, as stated, affirmed the administrative decision of denial of benefits.
 {¶ 12} The sole Assignment of Error is:
 ASSIGNMENT OF ERROR {¶ 13} "The trial court in error denied appellant's request for Unemployment Compensation Benefits."
 {¶ 14} Subsections (A) and (B) to such Assignment of Error are:
 {¶ 15} "A. Appellant did not quit his employment
 {¶ 16} "B.R.C. Section 4141.29 and/or 4141.291 are constitutional on their face, but unconstitutional as applied to appellant."
 {¶ 17} In Tzangas, Plakas Mannos v. Ohio Bur. Of Emp.Serv. (1995), 73 Ohio St.3d 694, the Ohio Supreme Court set forth the standard of review for appellate courts with regard to unemployment compensation administrative appeals. According to that decision, an appellate court may reverse a board decision only if it is unlawful, unreasonable or against the manifest weight of the evidence.
 {¶ 18} Also, R.C. 4141.282(H) states:
 {¶ 19} "(H) Review by the Court of Common Pleas
 {¶ 20} "The court shall hear the appeal upon receipt of the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."
 {¶ 21} The applicable statutes as to benefits are R.C.4141.29(G) and 4141.291:
 {¶ 22} "G) The `duration of unemployment' as used in this section means the full period of unemployment next ensuing after a separation from any base period or subsequent work and until an individual has become reemployed in employment subject to this chapter, or the unemployment compensation act of another state, or of the United States, and until such individual has worked six weeks and for those weeks has earned or been paid remuneration equal to six times an average weekly wage of not less than: eighty-five dollars and ten cents per week beginning on June 26, 1990; and beginning on and after January 1, 1992, twenty-seven and one-half per cent of the statewide average weekly wage as computed each first day of January under division (B)(3) of section 4141.30 of the Revised Code, rounded down to the nearest dollar, except for purposes of division (D)(2)(c) of this section, such term means the full period of unemployment next ensuing after a separation from such work and until such individual has become reemployed subject to the terms set forth above, and has earned wages equal to one-half of the individual's average weekly wage or sixty dollars, whichever is less."
 {¶ 23} Revised Code 4141.291 states:
 {¶ 24} "Notwithstanding section 4141.29 of the Revised Code, an individual who voluntarily quits work:
 {¶ 25} "(1) To accept a recall from a prior employer and establishes that the refusal or failure to accept the recall would have resulted in a substantial loss of employment rights, benefits, or pension, under a labor-management agreement or company policy;
 {¶ 26} "(2) To accept a recall to employment from a prior employer and cannot establish that a substantial loss of employment rights, benefits, or pension was involved in the recall, or to accept other employment subject to this chapter, or the unemployment compensation act of another state, or of the United States, where the individual obtains such employment while still employed or commences such employment within seven calendar days after the last day of employment with the prior employer, and subsequent to the last day of the employment with the prior employer, works three weeks in the new employment and earns wages equal to one and one-half times the individual's average weekly wage or one hundred eighty dollars, whichever is less;
 {¶ 27} "(3) Shall, under the conditions specified in either division (A)(1) or (2) of this section, remove the disqualification imposed by division (D)(2)(a) of section 4141.29
of the Revised Code and shall be deemed to have fully complied with division (G) of such section.
 {¶ 28} "(B) Benefits which may become payable to such individual because of the individual's subsequent separation from the employer who recalled that individual shall be charged to employer accounts as provided in division (D) of section 4141.24
of the Revised Code.
 {¶ 29} "(C) Any benefits which would be chargeable to the account of the employer from whom such individual voluntarily quit to accept such recall or other employment which are not chargeable to the recalling employer as provided in this section shall be charged to the mutualized account provided in section4141.25 of the Revised Code; except that any benefits chargeable to the account of a reimbursing employer under this division shall be charged to the account of the reimbursing employer and not the mutualized account, except as provided in division (D)(2) of section 4141.24 of the Revised Code."
 {¶ 30} The Ohio Supreme Court in Radcliffe V. ArtromickInternational, Inc. (1987), 31 Ohio. St.3d 40, discussed the statutory necessity of employment for a three-week period for unemployment compensation qualification. In that case, the employee had worked for two weeks but the employer had designated earnings as "severance pay" which was equated to a third week and unemployment benefits were allowed. Such case did not affect the three week mandatory period but found such was satisfied due to the classification of severance pay.
 {¶ 31} In the case sub judice, the essential issue differs from that in Radcliffe v. Artromick.
 {¶ 32} Prior to examining such primary issue, we must first state that there is no doubt that the quit from Snelling to accept employment with Lindsay was a quit without just cause. See R.C. 4141.29(D)(2)(a), Cardani v. Olsten Home Health Care (July 31, 1998), Tuscarawas App. 97 AP 120083.
 {¶ 33} Therefore, the argument remains as to whether Lindsay became the "employer" for unemployment compensation benefits on April 22, 2002, when Appellant was placed with Lindsay because such "customer employer" of Snelling controlled and directed his daily work activities even though he was paid by Snelling.
 {¶ 34} There are a number of cases, primarily involving the determination of "employer" versus "independent contractor" which rely to some extent on the factors of control and direction of work activities. See, Gillum v. Industrial Commission (1943),141 Ohio St. 373, 48 N.E.2d 234; Bobik v. Industrial Commission
(1946), 146 Ohio St. 187, 64 N.E.2d 829.
 {¶ 35} Also, in the workers' compensation arena, certain statutory definitions lend credence to such argument.
 {¶ 36} For purposes of workers' compensation, R.C.4121.01(A)(3) and (4) state:
 {¶ 37} "(3) Employer" means every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee.
 {¶ 38} "(4) Employee" means every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work, or be at any time in any place of employment."
 {¶ 39} A different definition of "employer" appears in R.C. 414101. Subsections (A)(1)(a)(b) provide:
 {¶ 40} "(A)(1) `Employer' means the state, its instrumentalities, its political subdivisions and their instrumentalities, and any individual or type of organization including any partnership, limited liability company, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee, or the successor thereof, or the legal representative of a deceased person who subsequent to December 31, 1971, or in the case of political subdivisions or their instrumentalities, subsequent to December 31, 1973:
 {¶ 41} "a) Had in employment at least one individual, or in the case of a nonprofit organization, subsequent to December 31, 1973, had not less than four individuals in employment for some portion of a day in each of twenty different calendar weeks, in either the current or the preceding calendar year whether or not the same individual was in employment in each such day; or
 {¶ 42} "b) Except for a nonprofit organization, had paid for service in employment wages of fifteen hundred dollars or more in any calendar quarter in either the current or preceding calendar year; or. . . ."
 {¶ 43} It would seem that a difference appears between the holdings in such cases and Workers' Compensation statutory definitions in R.C. 4121.01(A)(3) and (4), and R.C. 4141.01 when applied to the fact pattern present between Snelling and Lindsay as to Appellant's entitlement to benefits. In other words, was Lindsay the employer of Appellant for more than the mandatory three week requirement of R.C. 4141.291(A)(2) or not.
 {¶ 44} The Ohio Supreme Court has addressed an analogous situation in State ex rel Newman v. Indus. Comm. (1997),77 Ohio St.3d 271 and in State ex rel Mahoney v. Team America 3Inc., 99 Ohio St.3d 532, 2003-Ohio-4830, both of which involved an employment placement service (such as Snelling) and a "customer company" (such as Lindsay) utilizing placed employees.
 {¶ 45} In such cases, the Supreme Court determined that, as to Workmen's Compensation and violation of work safety standards, the "customer employer" is the employer regardless which entity paid the premiums.
 {¶ 46} In Newman v. Indus. Comm., supra, the Court in quoting Daniels v. MacGregor Co. (1965), 2 Ohio St.2d 89
stated:
 {¶ 47} "Appellees cite Daniels v. MacGregor Co. (1965),2 Ohio St.2d 89, 31 O.O.2d 141, 206 N.E.2d 554, in support for their argument that the customer companies may be deemed to be their employers for purposes of VSSR claims. In Daniels, an employee of a temporary agency was injured while working for a customer of that agency. The employee received workers' compensation benefits through a claim filed with the temporary agency. The employee then attempted to bring a tort action against the customer for damages. However, this court held that the customer, who had complied with the workers' compensation provisions, could not be sued for damages. In so holding, this court stated:
 {¶ 48} "`here an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of thecustomer within the meaning of the Workmen's Compensation Act.'
Emphasis added.) Id. at syllabus; Campbell v. Cent. TerminalWarehouse (1978), 56 Ohio St.2d 173, 10 O.O.3d 342,383 N.E.2d 135; see, also, State ex rel. Zito v. Indus. Comm. (1980),64 Ohio St.2d 53, 18 O.O.3d 257, 413 N.E.2d 787 (a general contractor who had the "authority to alter or correct" any deficiencies on the construction site could be liable for a VSSR claim brought by employee injured by scaffolding erected by subcontractor); State ex rel. Lyburn, supra.
Therefore, the court in Daniels found that the entity which controls the manner or means of performing the work is also the "employer" of the employee regardless of whether that entity paid the premium into the State Insurance Fund from which the compensation is paid. While Daniels dealt with the Workers' Compensation Act's exclusivity provision, R.C. 4123.74, we agree with appellees that its rationale should be expanded to allow coverage under the Act for VSSR claims against the customer-employer. To hold otherwise would be grossly unfair, as it would allow employers who fail to comply with the safety requirements immunity from VSSR claims as well as immunity from common-law damages. The commission's policy would permit customers of temporary agencies to avoid the requirements of the VSSR laws by making a contract with a temporary agency which lets the agency `employ' the workers on the employer's worksite. The employer who hires through a temporary agency would have no incentive to provide a safe workplace. Moreover, to adopt the Industrial Commission's position would leave temporary employees with no remedy to address injuries sustained as a result of an alleged violation of a specific safety requirement. Depriving these temporary employees of the additional award provisions of Section 35, Article II would defeat the General Assembly's purpose in enacting VSSR laws. See State ex rel. Lyburn, supra,at 280-281, 18 OBR at 332, 480 N.E.2d at 1112 (Holmes, J., dissenting)."
 {¶ 49} We determine that the significant differences between the constitutionally mandated right to Workers' Compensation benefits as opposed to the statutorily created unemployment compensation benefits requires compliance with R.C. 4141.29 and that the "direction and control" does not obviate the required three week work period.
 {¶ 50} We therefore determine that, for purposes of unemployment benefits to Appellant in this case that the direction and control of work activities by Lindsay is inapplicable and that Snelling was the employer until July 22, 2002.
 {¶ 51} We now direct our attention to subsection (B) of Appellant's Assignment of Error, to-wit: that R.C. 4141.29 and4141.291 have been unconstitutionally applied as he has been treated differently than similarly situated others. This differs from a constitutional attack on the statute itself.
 {¶ 52} There is no doubt that had such unconstitutional application of such statute been raised at the administrative level, Appellee would have lacked jurisdiction to consider such.
 {¶ 53} "Administrative bodies lack authority to interpret the Constitution and the Supreme Court has generally held that `requiring litigants to assert constitutional arguments administratively would be a waste of time and effort for all involved'." Jones v. Chagrin Falls, 77 Ohio St.3d 460,1997-Ohio-253.
 {¶ 54} In State ex rel. Columbus S. Power Co. v. Sheward
(1992), 63 Ohio St.3d 78, 585 N.E.2d 380, the Supreme Court of Ohio noted the well-settled rule that an administrative agency is without jurisdiction to determine issues pertaining to constitutionality. See, also, S.S. Kresge Co. v. Bowers (1960),170 Ohio St. 405, 166 N.E.2d 139. Citing Herrick v. Kosydar
(1975), 44 Ohio St.2d 128, 130, 339 N.E.2d 626, 627-628, the court explained that a declaratory judgment action is a "superior remedy" when alternative administrative proceedings would be "`futile preludes' to the subsequent assertion of the constitutional claim before the courts." State, ex rel. ColumbusSouthern Power Co. v. Sheward (1992), 63 Ohio St.3d 81,585 N.E.2d at 383.
 {¶ 55} Since the administrative body (Appellee) lacked such authority, it rests with the court. Therefore, we disagree with Judge Brown that he lacked jurisdiction to consider the claim of unconstitutional application if it were presented by the record being reviewed. This Court addressed a similar issue in the zoning case of Snee v. Jackson Township Board of Zoning Appeals,et al, Stark App. 2003CA00109, 2003-Ohio-5319, when it held:
 {¶ 56} Court of common pleas had jurisdiction to conduct de novo hearing on constitutional issues of selective enforcement and vagueness concerning zoning regulation in proceeding for judicial review of decision of township board of zoning appeals that denied property owner's appeal of zoning administrator's stop order notice regarding sign violation concerning use of semi trailer as advertising, since board was without authority and was not competent to evaluate constitution questions.
 {¶ 57} A similar ruling was made in SMC, Inc. v. Saudi
(1975), 44 Ohio App.2d 325, wherein the court held that the court of common pleas had jurisdiction to consider constitutionality of municipal zoning ordinances, as applied to specific property, on appeal from municipal board of zoning appeals even though board correctly ruled that it did not have jurisdiction to hear constitutional issues. R.C. § 2506.01 et seq.; Civ.R. 42.
 {¶ 58} Of course if the record demonstrates improper application from a Constitutional standpoint, such would be an appropriate assertion.
 {¶ 59} A statute or regulation may be declared unconstitutional either on its face or as applied to a particular set of facts. Belden v. Union Cent. Life Ins. Co. (1944),143 Ohio St. 329, 55 N.E.2d 629, paragraph four of the syllabus. "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." Women's Med. Professional Corp. v. Voinovich
(C.A. 6, 1997), 130 F.3d 187, 193. In addition, a statute or regulation may be unconstitutional as applied to a class of persons, or it may be unconstitutional as applied to an individual person. See, e.g., Washington v. Glucksberg (1997),521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772, fn. 4
 {¶ 60} The United States Supreme Court has held:
 {¶ 61} "Where, as here, an attack is made upon an act which is valid on its face, upon the ground that as applied to a given state of facts it is invalid, the burden rests upon the party making such attack to present clear and convincing evidence of a presently existing state of facts, which makes such act unconstitutional and void when applied thereto." See Nashville,C St. L. Ry. Co. v. Walters. Com'r (1935), 94 U.S. 405,55 S.Ct. 486, 70 L.Ed. 949.
 {¶ 62} In addition, Constitutional questions will not be decided until the necessity arises on the record before the court. State ex rel Herbert v. Ferguson, (1944),142 Ohio St. 496.
 {¶ 63} Here there is nothing in the record to indicate unconstitutional application of the statute. Appellant was free to reject the offer of employment from Lindsay and if so, would have qualified for unemployment benefits from Snelling if loss of work occurred or from a subsequent employer after three weeks thereat. The statutory time requirement is equally applied to all persons similarly situated.
 {¶ 64} We, therefore, reject the Assignment of Error and its subdivisions and affirm the decision reached at the administrative and common pleas court.
Gwin, P.J. and Edwards, J., concur.