DECISION
{¶ 1} Relator, G J Pepsi Cola Portsmouth Bottling Company, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate an order awarding temporary total disability ("TTD") compensation to respondent Steven Hellyer ("claimant"). Relator also seeks an order denying TTD compensation on grounds that claimant voluntarily abandoned his employment. *Page 2 
 {¶ 2} Pursuant to former Loc. R. 12(M) of the Tenth District Court of Appeals, [1] this court appointed a magistrate without limitation of authority specified in Civ. R. 53(C) to consider relator's cause of action. After examining the evidence, the magistrate issued a decision, wherein he made findings of fact and conclusions of law and recommended denial of relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Pursuant to Civ. R. 53, relator has filed objections to the magistrate's decision. See, generally, Civ. R. 53(D)(3)(b). Each respondent has filed a separate responsive memorandum opposing relator's objections. Claiming that the magistrate's application of relevant law to the facts of this case is error, relator asserts:
 The Court's Magistrate Erred by Failing to Conclude That A Claimant's Decision to Follow the Advice of His Union Representative And to Resign Does Not Constitute a Voluntary Abandonment of Employment, Thus Precluding The Payment Of Temporary Total Disability Compensation.
 {¶ 4} Here, the issues raised by relator in its objections resolve to (1) whether the commission's determination that claimant did not voluntarily abandon his employment is supported by some evidence in the record, and (2) whether the magistrate erred by finding that the commission's determination was supported by some evidence.
 {¶ 5} "Mandamus is an extraordinary writ that must be granted with caution." State ex rel. Liberty Mills, Inc. v. Locker (1986),22 Ohio St.3d 102, 103. To be entitled to a writ of mandamus, a relator must show that: (1) there is a clear legal right to the requested relief; (2) respondent is under a clear legal duty to perform the requested act; and (3) relator has no plain and adequate remedy at law. State ex rel. Fainv. Summit *Page 3 Cty. Adult Probation Dept. (1995), 71 Ohio St.3d 658, citing State exrel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589.
 {¶ 6} "In matters involving the Industrial Commission, the determinative question is whether relator has a clear legal right to relief. Such a right is established where it is shown that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel. Valley PontiacCo., Inc. v. Indus. Comm. (1991), 71 Ohio App.3d 388, 391, citingState ex rel Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, "where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is inappropriate." Valley Pontiac Co., Inc., at 391, citing State ex rel.Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 7} Finding that relator failed to prove that claimant voluntarily abandoned his former position of employment, a staff hearing officer ("SHO") observed that claimant was extensively questioned at the hearing regarding the particular facts and circumstances of this case. The SHO found that, shortly after claimant's industrial injury, his employer summoned him to the workplace. The SHO further found that a union representative informed claimant that he was required to attend a meeting with management and also informed him that he likely would be fired because he allegedly refused to submit to a drug screening. The SHO also found that claimant was informed that he would be fired if he failed to attend the meeting with management. The SHO further found that claimant was informed that, if he refused to resign, then management would forward a report to the department of transportation that suggested that he refused to undergo a drug screen, with the likely consequence that he would lose his commercial driver's license and be rendered unemployable. *Page 4 
 {¶ 8} The SHO further found that claimant was not provided with any opportunity to consider his options or consult with legal counsel. In his decision, the SHO also observed that claimant's testimony regarding the mechanism of injury, his lack of prior back problems or treatment, and his account of reporting his industrial injury to a work supervisor was "lengthy, credible and persuasive."
 {¶ 9} "[Determination of disputed factual situations is within the final jurisdiction of the commission, subject to correction by action in mandamus only upon a showing of abuse of discretion." State ex rel.General Motors Corp. v. Indus. Comm. (1975), 42 Ohio St.2d 278, 282-283, citing State ex rel. Haines v. Indus. Comm. (1972), 29 Ohio St.2d 15;State ex rel. Reed v. Indus. Comm. (1965), 2 Ohio St.2d 200; State exrel. Allied Wheel Products v. Indus. Comm. (1956), 166 Ohio St. 47.
 {¶ 10} "Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding." State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165,169; see, also, State ex rel. Cherryhill Mgt, Inc. v. Indus. Comm.,116 Ohio St.3d 27, 2007-Ohio-5508, at ¶ 13, citing Teece, supra. "The commission alone shall be responsible for the evaluation of the weight and credibility of the evidence before it." State ex rel. Burley v. CoilPacking, Inc. (1987), 31 Ohio St.3d 18, 20-21; see, also, State ex rel.LTV Steel Co. v. Indus. Comm. (2000), 88 Ohio St.3d 284, 287, citingState ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373,376 (stating that "[t]he commission is the exclusive evaluator of weight and credibility, and as long as some evidence supports the commission's decision, reviewing courts must defer to its judgment").
 {¶ 11} Here, it was within the commission's province to give weight to claimant's testimony about the union representative's advice to him and also was within the *Page 5 
commission's province to assess claimant's credibility. Characterizing claimant's testimony as "lengthy, consistent, credible, and persuasive," the commission, as fact finder, found that claimant's testimony was persuasive. Such persuasive testimony constitutes "some evidence" before the commission.
 {¶ 12} After independently reviewing the evidence, we therefore cannot conclude that the commission's order is not supported by some evidence. Neither can we conclude that the magistrate's application of relevant law to the pertinent facts is erroneous. Finding that the commission's order is supported by some evidence, we therefore conclude that relator has failed to establish that the commission's award of TTD compensation to claimant constitutes an abuse of discretion. We further find that relator has failed to establish the jurisdictional prerequisites for issuance of a writ of mandamus.
 {¶ 13} Accordingly, following independent review pursuant to Civ. R. 53, see, generally, Civ. R. 53(D)(4)(d), we find that the magistrate has properly determined the pertinent facts and applied the relevant law to these facts. As amplified here, we adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law. We therefore overrule relator's objections to the magistrate's decision and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
 McGRATH, P.J., and KLATT, J., concur. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 14} In this original action, relator, G J Pepsi Cola Portsmouth Bottling Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent Steven Hellyer ("claimant") and to enter an order denying *Page 7 
said compensation on grounds that allegedly claimant voluntarily abandoned his employment.
Findings of Fact: {¶ 15} 1. On November 9, 2006, claimant sustained a lumbosacral sprain while employed with relator, a self-insured employer under Ohio's workers' compensation laws. According to the First Report of an Injury, Occupational Disease or Death (FROI-1), claimant's job title was "utility driver/sales." Between 8 and 8:30 a.m. on the date of injury, relator twisted his back while moving an ice barrel. He immediately reported his injury to his employer.
 {¶ 16} 2. The next day, on November 10, 2006, claimant presented to an "Urgent Care." Claimant's visit generated the following written statement from the "Urgent Care" nurse:
 [Patient] taking his wifes Percocet for back pain that started yesterday[.] [Patient] was not seen or prescribed any narcotics. The [patient] claims this started yesterday while at work. The [patient] became very angry after being questioned about the Percocet. The [patient] stormed out after being told he would need to have a drug screen. * * *
 [Patient] refused any evaluation and pepsi notified of the [patient's] actions.
 {¶ 17} 3. After his visit to "Urgent Care," on the same date, claimant presented to a hospital where he was examined and x-rayed. On November 10, 2006, claimant also submitted a urine specimen for the purpose of undergoing a drug screen.
 {¶ 18} 4. The following day, November 11, 2006, H.D. Belk, M.D., the medical director of the laboratory to which the urine specimen was sent, reported:
 The specimen with testing completed on 11/11/2006 was Negative for all drugs tested. *Page 8 
 The drugs tested for include:
 [One] Amphetamine
 [Two] Cocaine
 [Three] Cannabinoid
 [Four] Opiates
 [Five] Phencyclidine (PCP)
 Confirmation testing of all positive substances was performed by Gas Chromatography/Mass Spectrometry methodology at the above-named Substance Abuse and Mental Health Services Administration (SAMHSA) certified laboratory. This information should be made a part of your confidential substance abuse testing records.
(Emphasis sic.)
 {¶ 19} 5. Relator refused to certify the industrial claim.
 {¶ 20} 6. On December 4, 2006, claimant was initially seen by chiropractor Jeffery Thompson, D.C. On December 27, 2006, Dr. Thompson completed a questionnaire provided by the Ohio Bureau of Workers' Compensation ("bureau"). On the bureau questionnaire, Dr. Thompson certified that claimant was disabled from employment from November 9, 2006 to "Present."
 {¶ 21} 7. Also on December 4, 2006, Dr. Thompson completed a C-84 on which he certified TTD from December 4, 2006 to an estimated return-to-work date of January 4, 2007.
 {¶ 22} 8. On March 12, 2007, Dr. Thompson completed another C-84 on which he certified TTD from December 4, 2006 to an estimated return-to-work date of March 4, 2007.
 {¶ 23} 9. On March 14, 2007, a district hearing officer ("DHO") heard the contested industrial claim and the request for TTD compensation. Following the hearing, the DHO issued an order stating: *Page 9 
 This claim is allowed for the sole requested medical condition, as verbally clarified by the injured worker's attorney at hearing, of "lumbosacral sprain." The DHO finds that the injured worker sustained a compensable injury in the course and scope of, and arising out of, his employment on 11/09/2006 when he caught a large heavy falling barrel filled with ice and pop and experienced back pain.
 This order is based on the FROI-1, Dr. Thompson's 12/27/2006 questionnaire and 12/04/2006 treatment records, and the injured worker's lengthy, consistent, credible and persuasive testimony at hearing regarding the mechanism of injury, his lack of prior back problems or treatment, and the fact he reported the injury to his supervisor within minutes.
 The injured worker's request for temporary total disability compensation from 11/10/2006 through 12/03/2006 shall be considered by the self-insured employer upon submission of evidence supporting the payment of temporary total disability compensation over this period. The injured worker's request for temporary total disability compensation from 12/04/2006 through 03/03/2007 is granted. The DHO finds that the injured worker was unable to perform the duties of his former position of employment over this period due to the allowed condition in this claim. Temporary total disability compensation after 03/03/2007 is hereby ordered to continue to be paid upon submission of evidence supporting the payment of further temporary total disability compensation. This decision is based on Dr. Thompson's 03/12/2007 C-84. * * *
 * * *
 The DHO finds that the employer has not met its burden of proving that the R.C. 4123.54
rebuttable presumption applies in this case because the employer has not proven that it has the required notice posted or had otherwise notified the injured worker that his workers' compensation benefits could be affected by a negative test or refusal to take a test. In addition, the employer has not proven that it had reasonable cause or suspicion to test the injured worker, which is also required by the statute.
 The DHO also finds that the employer has not proven that the affirmative defense of voluntary abandonment, pursuant to the Ohio Supreme Court's [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401] case, *Page 10 
applies so as to bar the payment of temporary total disability compensation. Specifically, the employer has not proven that the injured worker was terminated, what the date of termination was or the grounds for termination.
 {¶ 24} 10. Relator administratively appealed the DHO's order of March 14, 2007.
 {¶ 25} 11. Following an April 17, 2007 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 03/14/2007, is AFFIRMED.
 Therefore, this claim remains correctly ALLOWED for LUMBOSACRAL SPRAIN. This finding is based on the reports of Dr. Thompson, as well as the injured worker's lengthy, consistent, credible and persuasive testimony at hearing regarding the mechanism of injury, his lack of prior back problems or treatment, and the fact that he reported the injury to his supervisor within minutes. There is no medical evidence contra to the allowance of this claim for lumbosacral sprain. The employer does not seriously contest that the injured worker did indeed sustain a lumbosacral sprain as a result of his work activity on or about the 11/09/2006 date of injury.
 The injured worker's request for temporary total disability compensation from 11/10/2006 through 12/03/2006 shall be considered for payment by the self-insuring employer upon submission of evidence supporting the payment of temporary total disability compensation over this period. The injured worker's request for temporary total disability compensation from 12/04/2006 through 03/03/2007 is granted. The SHO finds that the injured worker was unable to perform the duties of his former position of employment over this period due to the allowed conditions in the claim. Temporary total disability compensation after 03/03/2007 is hereby ordered to be continued to be paid upon submission of evidence supporting the payment of further temporary total disability compensation. This finding is based on Dr. Thompson's 03/12/2007 C-84 report.
 The SHO finds that the employer has not met its burden of proving that the R.C. 4123.54 rebuttal presumption applies in this case because the employer has not proven that it has the required notice posted or had otherwise notified the *Page 11 
injured worker that his worker's compensation benefits could be effected by a positive drug test or by a refusal to take a drug test. In addition, the employer has not proven that it had reasonable cause or suspicion to test the injured worker, which is also required by the statute. The injured worker was questioned extensively at this hearing regarding this particular issue. The injured worker testified that he did not refuse to take a drug test on or about 11/10/2006. Rather, the injured worker persuasively testified that he had a verbal argument with Dr. Benton. The injured worker left the office of Dr. Benton, after Dr. Benton accused him of being a liar, a felon, a drug thief, a drug addict, and after Dr. Benton had called the injured worker stupid. The injured worker testified that he traveled to a different hospital, where he was given a drug test by [a] doctor who did not act [in] a belligerent and disrespectful manner to the injured worker. Interestingly, that drug test, was performed shortly after the industrial injury, and that test result was negative for all drugs tested. This finding is based on the testimony of the injured worker, as well as the 11/11/2006 drug results report from Dr. Belk. Based on the persuasive testimony of the injured worker at this hearing, the Staff Hearing Officer concludes that the 11/10/2006 report of Dr. Benton is not persuasive in its conclusion that the injured worker opened [sic] "refused" an offered drug test. Based on all of the above, the employer has not established that the R.C. 4123.54 rebuttal presumption has been met so as to prohibit the allowance of this industrial claim.
 The SHO also finds that the employer has not proven that the affirmative defense of voluntary abandonment applies so as to the [sic] bar the payment of temporary total disability compensation. Again, the injured worker was questioned extensively at this hearing regarding the particular facts and circumstances surrounding this case. Shortly after the allowed industrial injury, the injured worker was summoned to his workplace by the employer. His union representative indicated to him that the injured worker was required to immediately go into a meeting with management. He was also informed that he would be fired as a result of attending the meeting, because the employer felt that the injured worker has refused a drug test. The injured worker was also informed that he would be fired if he did not immediately attend the meeting with management. He was also informed that unless he resigned, management would give a copy of Dr. Benton's 11/10/2006 report to the Department of Transportation, and the injured worker would automatically *Page 12 
lose his CDL license, and would be unemployable and would be fired by the employer for that reason as well. The injured worker was informed that if he would "voluntarily" resign, the employer would not forward the 11/10/2006 report of Dr. Benton to the Department of Transportation. The injured worker was not given any time [to] consider his options or consult with legal counsel.
 The injured worker persuasively testified at this hearing that he has been unable to return to his former position of employment, or physically be able to perform his former position of employment, since the 11/09/2006 date of injury. The 11/13/2006 clinic discharge and return to work certificate signed by Dr. Larson, also persuasively demonstrates that the injured worker has been prevented by the allowed industrial injury and condition from returning to his former position of employment. Therefore, the claimant was physically unable to perform his former position of employment, due to the allowed industrial injury, prior to the date that his employer forced [him] to either attend a termination meeting, or to "voluntarily" resign his position. Based on all of the above reasons, the Staff Hearing Officer finds that the self-insuring employer has not met its burden of establishing the affirmative defense that the injured worker voluntarily abandoned his former position of employment for reasons unrelated to the industrial injury. The Staff Hearing Officer finds that the cases of State ex rel. Luther v. Ford Motor Co., 113 Ohio St3d 144, 2007-Ohio-1250, and Coolidge v. Riverdale Local School District, 100 Ohio St.3d 141, 2003-Ohio-5357, and State ex rel. Pretty Products, Inc. v. Industrial Commission (1996), 77 Ohio St.3d 5 support the conclusion that the injured worker did not abandon his former position of employment.
 The Staff Hearing Officer has carefully considered all evidence in the claim file and presented at this hearing.
(Emphasis sic.)
 {¶ 26} 12. On May 3, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 17, 2007. *Page 13 
 {¶ 27} 13. On May 18, 2007, relator moved for reconsideration of the SHO's May 3, 2007 refusal order. In support, relator submitted a written memorandum. In the memorandum, relator states:
 Significantly, after speaking with his Union representative about the relevant events that transpired, the Claimant made a decision to resign. The primary issue for consideration in this case is as follows: Is a claimant's reliance upon the advice of a Union representative to resign a "voluntary abandonment" under Ohio law?
 {¶ 28} 14. On June 12, 2007, the three-member commission mailed an order denying relator's request for reconsideration.
 {¶ 29} 15. On August 13, 2007, relator, G J Pepsi Cola Portsmouth Bottling Company, filed this mandamus action.
Conclusions of Law: {¶ 30} The issue is whether the commission's determination that claimant did not voluntarily abandon his employment is supported by some evidence upon which it relied.
 {¶ 31} The magistrate finds that the commission's determination that the abandonment of employment was not voluntary is supported by some evidence upon which the commission relied. Therefore, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 32} Historically, this court first held that, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued TTD benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment. State ex rel. Jones Laughlin Steel Corp. v.Indus. Comm. (1985), 29 Ohio App.3d 145. The Jones Laughlin rationale was adopted by the Supreme Court of Ohio *Page 14 
in State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, wherein the court recognized a "two-part test" to determine whether an injury qualified for TTD compensation. Ashcraft at 44. The first part of the test focuses upon the disabling aspects of the injury whereas the latter part determines if there are any other factors, other than the injury, which prevent the claimant from returning to his former position of employment. Id. Thus, the Ashcraft court held that a claimant's incarceration precluded receipt of TTD compensation because, when a person chooses to violate the law, he is presumed to tacitly accept the consequences of his voluntary acts.
 {¶ 33} In State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44, the court held that an injury-induced abandonment of the former position of employment, as in taking a retirement, is not considered to be voluntary.
 {¶ 34} In State ex rel. Diversitech Gen. Plastic Film Div. v. Indus.Comm. (1989), 45 Ohio St.3d 381, the court held that a claimant's acceptance of a light-duty job did not constitute an abandonment of his former position of employment. The Diversitech Gen. court stated, at 383:
 * * * The question of abandonment is "primarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts. * * * All relevant circumstances existing at the time of the alleged abandonment should be considered." * * *
 {¶ 35} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. TheLouisiana-Pacific court held, at 403, that the claimant's discharge was voluntary, stating:
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited *Page 15 
conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and [State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 36} The Louisiana-Pacific rationale was applied to preclude TTD compensation where a claimant was fired by his employer for violating his employer's written drug abuse policy. State ex rel. Cobb v. Indus. Comm. (2000), 88 Ohio St.3d 54.
 {¶ 37} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, the court further explained its decision in Louisiana-Pacific stating:
 Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
 The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.
Id. at 561. (Emphasis sic.)
 {¶ 38} An injured worker who has voluntarily abandoned his employment may thereafter reinstate his TTD entitlement. State ex rel. McCoy v.Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305. The syllabus of McCoy states:
 A claimant who voluntarily abandoned his or her former position of employment or who was fired under *Page 16 
circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 39} In this action, relator does not claim that claimant violated a written work rule or that claimant was fired for violating a written work rule. Accordingly, the Louisiana-Pacific line of cases are not relevant here.
 {¶ 40} Here, relator claims that claimant voluntarily resigned his employment and that the commission abused its discretion in failing to so find. Relator further presents what it calls the ultimate issue:
 * * * Does an injured worker's decision to follow the advice of his Union representative and to resign constitute a voluntary abandonment of employment that should preclude the payment of temporary total disability compensation? * * *
(Relator's reply brief, at 2.)
 {¶ 41} According to relator:
 * * * There is no evidence that anyone forced Respondent Hellyer to resign, there is no evidence that Respondent Hellyer would have been terminated had he not resigned — although Respondent Hellyer testified that he was concerned that he would be terminated — and there is no evidence that had Respondent not made a decision to relinquish his employment rights, that he would not still be working for Pepsi.
Id. at 3.
 {¶ 42} The lengthy SHO's order details the testimony of claimant as to what happened on the date that he resigned from his employment. According to claimant's testimony, his union representative informed him of the situation that he was about to face at the meeting with "management." Apparently, the SHO found claimant's testimony to *Page 17 
be credible. In fact, the SHO characterized the testimony as "lengthy, consistent, credible and persuasive."
 {¶ 43} Significantly, the SHO's order indicates that only counsel for relator appeared for relator at the April 17, 2007 hearing. Apparently, relator sent no one to the hearing to testify. Relator presented no testimony, no affidavit, nor even a written statement from any member of its management that was involved in the meeting that claimant's union representative informed claimant about. That is, relator never challenged the accuracy or truthfulness of the matters of which the union representative informed claimant on the date of his resignation.
 {¶ 44} Relator cannot be allowed here to suggest that claimant's resignation is simply the result of some misunderstanding or misperception of the union representative as to management's intention on the date of resignation.
 {¶ 45} Contrary to what relator argues here, there is indeed some evidence that claimant would have been fired had he not resigned. That evidence is the testimony of claimant as to what his union representative informed him on the date of his resignation.
 {¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
KENNETH W. MACKE, Magistrate.
[1] After relator commenced this original action, this court's local rules were amended, effective June 1, 2008. See Loc. R. 20 of the Tenth District Court of Appeals. *Page 1